Levine v. Employers Insurance. Mr. Miller, happy to hear from you, sir. Good morning, your honors. Your honors, this case is before the court to interpret an insurance policy de novo. The district court granted summary judgment to Wausau on an insurance policy that was issued to Pernell Furniture Delivery Services. I represent Marco Gabbaretti. Mr. Gabbaretti was driving a motor vehicle that was rented by Pernell for the purpose of delivering furniture for Pernell. His passenger was Carlos Balanos, and during the course of their delivery, they were involved in a motor vehicle accident. Mr. Gabbaretti has made a claim for uninsured motorist coverage under the Wausau policy. Wausau denied that claim. The U.S. District Court ruled that Mr. Gabbaretti and Mr. Balanos were not entitled to coverage based upon the court's opinion that the motor vehicle rented by Pernell was not a covered auto under the motor vehicle policy issued by Wausau. Essentially, when looking for coverage under an insurance policy, one looks at the coverage portion that it wants to apply. And in this case, what we did is we looked at the uninsured motorist endorsement under the policy. Under the Seals case, decided by the Virginia Supreme Court, which is the most recent decision. At least in terms of where we are, because these cases always, you just have to go to the policy. You have to get into the mood and just fur it out. And it seems to me that, if I understand it correctly, the conflict arises from one side saying coverage, scheduled coverage provision, what really predominates here. You emphasizing the endorsement here. And saying that endorsement, I guess at least creates an ambiguity. That's correct. They may present something here. So why don't you sort of, if that is there, go there. And let's see what we're dealing with here, because that seems to be key to this case. Correct, Your Honor. I agree. The uninsured motorist endorsement, the importance of that endorsement is this. It's an endorsement. It changes the policy. The other side says that they don't have a choice. That's something Virginia says you've got to put in. That's boilerplate stuff. They didn't write it, I guess. They just required to have it in there. And if they're forced to have it in there, they're bound by it. They can't say, we purchased this policy. We got this endorsement. But we didn't want that endorsement. But there it is. They agreed to it. They paid the premiums for it. And it's part of the policy. And the endorsement says it changes the policy. But does that change the policy aspect of it that an ambiguity is construed against the insurer if they didn't actually write it or had a hand in putting it in there? Well, they agreed to it. They purchased the policy. They didn't have to write that policy in Virginia if they didn't want to. Maybe they could have charged an extra premium for this. Where was the endorsement agenda? Where was it drafted? I don't know that, Your Honor. There was an insurance agent that they used locally in Virginia who obtained that policy from Wausau. But I don't know physically where it was drafted. Why don't you give us a page in the appendix where one of the endorsements is that you say creates this ambiguity. The endorsement is in the joint appendix at 104. And this is the Virginia Uninsured Motorist endorsement. In addition to saying that it changes the policy, it has words and phrases with special meaning. And it defines one of those phrases with special meaning as covered auto, means a motor vehicle, or a temporary substitute with respect to which the bodily injury or property damage liability coverage of the policy applies. So to determine whether or not the vehicle was a covered vehicle for the purpose of the UM coverage, we have to determine if the vehicle that they were operating is a covered auto or is a motor vehicle with respect to which the bodily injury or property damage liability coverage applies. So we go to the motor carrier coverage form. And the motor carrier coverage form is what is located at the joint appendix at 148. And that is the liability portion of the policy. Now, the motor carrier coverage form contains codes on the first page. And those codes refer to the declarations. With respect to liability coverage, the code that applies to liability coverage is symbol 61, any auto. And that's in the declarations for liability coverage. So that's significantly broader than schedule 62, which gives UM coverage to owned automobiles only. That's correct. Okay. And this is not an owned automobile. Correct. So why does that not cut against you? Well, that may be what they intended to do, that is to save money, that they wanted to try to limit the uninsured motorist coverage to owned autos only. But they didn't do it. It didn't work. Well, that's what they did in the schedule of coverages. That's correct. But under the schedule of coverages, which talks about what the covered autos are, they define the covered autos a certain way. But this endorsement redefines what is a covered auto and refers to the liability coverage. That is the endorsement is the more specific provision. Why? It's more specific because the motor carrier coverage form and the endorsements do not define what it means by a covered auto. I'm a little nervous about attaching all of this importance to the endorsement because it seemed to me that the Virginia Supreme Court in Stone did not want UM. And in Stone, the Virginia Supreme Court was interpreting the Virginia Code and what its requirements were. And they go out of their way, and we do the same thing in our acres decision, to say that UM coverage does not automatically attach to any vehicle to which liability coverage applies. So there's a difference between that to which liability coverage applies and that to which UM coverage applies. And what the Virginia Supreme Court, it seemed to me, was doing is to maximize freedom of contract between the various parties. And here you have two, I guess, relatively sophisticated commercial entities. The Virginia Supreme Court says we want you to have freedom of contract if you want to buy the UM coverage and have it as broad as liability coverage, you can pay the premium if you don't have to. And it seemed to me that looking at, just superficially, looking at symbol 61 and 62 and the schedule of coverage, that there was a bifurcation between what coverage was for liability purposes and the extent of coverage for UM purposes. There's a bifurcation in the policy that I can't escape and that the Virginia Supreme Court appears to say under the Virginia Code is permissible and that the parties can negotiate the thing any way they please. That's the basic question I'm having. Yes, Your Honor. And my time is up. And what I want to say lastly, before I turn this over to other counsel, is this. Even though the Stone case stood for the proposition that UM coverage does not have to be supplied to non-owned vehicles with regard to a second class insured, this policy does. This endorsement does do that. And Mr. Gaboretti should be entitled to what is in that policy. And if there is an ambiguity, a conflict, it should be decided in favor of coverage. We can let other people discuss this, too, but I'm still left with the question of how somewhat ambiguous endorsement overrides the bifurcation in the schedules of coverages, 61 and 62. That's all. I will turn this over to other counsel. I've got an army of people behind you on this, so let's hear from Mr. Mallory. Good morning, Your Honor. My name is Mike Mallory. I'm counsel for Appellants Amicus, VTLA. VTLA is a plaintiff's attorney association. We represent people who are in cases similar to this. And, in fact, I am a member of VTLA, as are both appellants' counsels. Your Honor, if I could pick up. I actually wanted to say something slightly different, but if I might pick up the discussion where Mr. Miller left it. The distinction in Stone is not to the issue of uninsured or insured motor vehicles. It goes to the issue of who isn't insured when traveling in a non-owned automobile. And as Mr. Miller pointed out at the end, and I didn't want the point to go unnoticed, the Supreme Court in Stone did suggest, or that's what the case says, that the policy need not provide uninsured motorist insurance to a second-class insured, which is to say not the named insured, while traveling in a non-owned automobile. That's the limitation of the case. The problem, of course, is that this policy does provide precisely that coverage. The endorsement, terms of the endorsement, are abundantly clear. They say that they are covered under those circumstances. So, Your Honors, correctly frame this as a conflict between two separate provisions in an insurance policy, which absolutely cannot be read together because they conflict with one another. The deck page says they don't get coverage, and the endorsement says that they do. The problem we've got here is that when you have two separate and competing provisions like that, it either creates an ambiguity which should be resolved in favor of the insureds, or, in the alternative, you try to read the policy in such a way that there is no conflict. But why aren't the schedules of coverages more specific? And they don't seem to be ambiguous at all.  There's no ambiguity in the declarations page whatsoever. And the schedules, and this is the schedule of coverage, it's not an exception or whatever, but the schedule of coverages seem to be specific. It seems to be, as you've just agreed, non-ambiguous. I could not disagree with you on that, Your Honor, because it's perfectly clear that they are, in and of themselves, perfectly clear, which also, and I think counsel for the appellee will concede, absolutely clear what the endorsement grants. The problem is that they grant different things. The only way to read them in a way that makes sense is to say, and I want to step kind of back to this in a second because I think under the Seals case, you start with the endorsement. Seals says, we're going to start in the proper place with the endorsement. If you start with the endorsement, then the appellants have to be successful. But let's say you take the opposite point and you start with the deck page. You start with the deck page. It doesn't grant coverage. You move to the endorsement. The endorsement right at the top says, okay, now it's going to change. This endorsement changes the policy. So we know there's a change. What's the change? Now there's coverage. The endorsement in and of itself cannot exist just for the purpose of filling up space in the policy. It must do something. It must actually change the policy. How does it change the policy? Not by granting UIM coverage. We know from 38-22-06 that everybody has UIM. Every vehicle has UIM coverage in Virginia. So the endorsement can't be there to give UIM coverage. It must do something else. It must change the policy. How does it change the policy? In this particular policy, which was written by Wausau, not by the people who got hurt in this case, it changes the policy to now provide UIM coverage where it might not have otherwise. The only way that Wausau could get around that would be just not to write UIM coverage at all. I mean, they've got to use the endorsement. Your Honor, I believe that's exactly right, Judge. But it seems to me that years after the issuance of the policy is not the time for an insurance company to raise the issue of Essentially, the argument is, look how clear it is. We don't have to pay what it says we have to pay. Well, that, to me, goes back to several questions about what's the specific provision and what's the general provision. Yes, sir. And it would appear to me that the endorsement is very general, but the deck page and the schedule of covered autos is extremely specific. It names the vehicles. Your Honor, if I may respond to that, I would say that I think it's a question of interpretation because if you read the deck page, and I pointed this out in my brief, it covers so many different topics that it could not possibly be considered specific to the issue of uninsured motorist coverage in Virginia. Well, how could it not be specific if it identifies the specific vehicles? Well, it tells you, and I've conceded this, it tells you that there's no UIM coverage on the deck page. And I can't argue that. The thing about it is, if following the Stone decision, it looks like this policy was written in light of Stone, and it specifically sets out to make the point that there's one set of coverages for liability purposes, and then there's a distinct and separate set of coverages for UIM purposes, owned automobiles only. And that is pretty, it doesn't get much more specific or to the point than that. Your Honor, that presumes that Stone gives us a piece of law which this policy would have been built upon. It gives parties the opportunity to negotiate, and it gives them the opportunity to split the two. And what it says, crucially, is that the UIM policy doesn't automatically attach to a vehicle to which the liability applies. And then it seems to me the policy picks up on that very point and goes out of its way, bends over backwards, to make that very point. And probably the plaintiff here got a break on the premium by the fact that the UIM coverage, that it wasn't having to shoulder UIM coverage for any automobile, where all the owned automobiles only. Your Honor, I only have a minute left, but I will say this. It is clear from the policy that the Purnell paid something called an endorsement premium. It's about $600, and it's not clear to me what it covered. It certainly didn't cover a majority of the endorsements, because most of the endorsements restrict coverage rather than expand coverage. For example, if there's an endorsement about flood coverage and you're not covered because you're not in a floodplain, what have you. But there's an endorsement premium charged on this policy. I don't know what it's for, but I would say this. Remember that the Stone case doesn't say that a vehicle doesn't have to be covered. What it's saying is you might be able to restrict coverage to insureds who are not insureds of the first class, and then it is qualified extensively. I think my time is up, Judge. Finish your point, please. The Stone case then qualifies that. The rule was, look, just look at the deck page. We've told you all this. We've been telling you all the way since the Akers case that you look at the deck page. Instead, what it says is, okay, we're looking at the deck page. And then it says, secondly, and more importantly, it's a question of ownership. It's a question of the right to grant control of a vehicle to someone. I would submit to this court that if these facts were in front of the Virginia Supreme Court and the ownership issue was abundantly less clear since this vehicle was clearly in the control of the insured, that they would find differently. Okay. Thank you. Thank you very much. Something seems to be a little unusual about these lights because the green light is on when the red light is on. You could get in some accidents that way if we were on the road. Maybe you could get it straightened out. Okay. Mr. Stephens, go ahead. Good morning, Your Honor. My name is Ford Stephens. I'm here on behalf of the Employers Insurance Company of Wausau. This court has put its finger on it, which is the Stone case in Virginia. It specifically allows an insurer and an insured to have coverage. So Stone just gives parties the freedom to split U.M. coverage from liability coverage, okay? Yes, Your Honor. And the whole question is whether they've exercised that freedom in this particular policy. They have, Your Honor. They have as set forth in the deck sheet. The deck sheet used the term or the symbol 62, and 62 is owned autos only. It could have used another symbol in the policy. Another symbol in the policy was 68, which is hired autos. They didn't use 68. So there is no U.M. coverage for hired autos. There's only coverage for owned autos only. That's the plain reading of the policy. Now, what the plaintiffs want to do in this case is focus in on the U.M. endorsement. And the U.N. endorsement is required to be used by the State Corporation Commission. Under statute in Virginia, once the State Corporation Commission has done that, insurers must use the form. The question was raised earlier, where did it come from? It's acknowledged by the plaintiffs in their brief on page 7 that it came from the State Corporation Commission. And the lower court at Appendix 477 also indicated as much. Well, the U.N. endorsement can't override the Stone decision. It cannot, Your Honor. And so there's a danger here if we say that any case with a U.N. endorsement overrides specific coverages, and the U.N. endorsement is required, and we say whenever it's in a policy that overrides the specific coverages in the schedule, then we're saying that essentially the Virginia Supreme Court decision interpreting the Virginia Code is trumped by this obligatory endorsement. And you had an agency or someone overriding the state's highest court. As one of my former mentors, Harvey Chopp, would say, that can't be the law, Your Honor. It can't be the law that the State Corporation Commission can usurp the General Assembly's power to indicate which vehicles must have U.N. coverage. And the Virginia Supreme Court's interpretation of that. And the Virginia Supreme Court's interpretation of it in the Stone case. That's a central fallacy in the plaintiff's argument. The problem is that it's in the policy. When you look at policies, you're looking at them from the insurer's perspective. Virginia has a law that if there's ambiguity, it favors the insurer. You put these varying policies there. This endorsement has one interpretation of the schedule, a different one. It seems to be in conflict. And if there's conflict, that seems to indicate ambiguity. But let me ask you the additional question. We're going on about Virginia law. Stone case, Seals case. As the other side pointed out, Seals went straight to the endorsement. I don't know if there was a schedule or not. Right to that endorsement and dealt with it. And then other cases have done with that. And why isn't this a case we ought to send to the Virginia Supreme Court and tell us the answer? Could they just tell us the answer to this and make it simple? Or should we just use our interpretive ability and say, well, this is specific, not specific. You've got this endorsement. They've never answered the question. They've never squarely answered this question nor any other court. So we've got to pull from the stone. That's what they meant, even though stone is really a different case. Your Honors, as I understand the process by which this court and the federal district courts certify cases to the Supreme Court, it is when there's an absence of controlling law in which the court can discern what the law is in Virginia. Respectfully, I don't think there's an absence of case law in this situation. There are the cases that we have cited to the court, the Bear case and the Hill case. And the Bear case and the Hill case had the same endorsement with the same language about what covered autos are. And when the Bear case and the Hill cases came down, Hill later explained what the Bear case was, which is that the Bear case also had – Can you deal with the kind of situation we have here? We have an endorsement that is in conflict with the scheduled cover. Yes, Your Honor. That was the Bear case. The Bear case had the same endorsement that talked about – had the same covered auto. It said covered auto is an auto to which bodily injury or property damage liability or – and property damage liability of the policy apply. What's the site in that? The site of the Bear case, Your Honor? Yeah. If I may return to my – Yes, you may. It's in the briefs, Your Honor. But the Bear case is 267 Southeastern 2nd, 91. The Bear case had a deck sheet that specifically identified – like the deck sheet in this case – that specifically identified those vehicles that were covered for U.N. purposes. And so when the court in Hill went back to Bear and looked, it went back to its record, found that deck sheet, and then said, because of that, it said the declarations page of the Whitaker policy contained a specific section addressing vehicles included for the purposes of U.N. coverage. Only automobiles owned by the named insured were designated for insurance coverage under the U.N. endorsement, and therefore the policy did not cover the vehicle owned by Bear, who was not – That's how the court distinguished the Bear case. Yes, Your Honor. In Hill, there was no deck sheet. And the court in Hill actually dropped a footnote when it distinguished the two cases and said, we have no deck sheet before us in Hill. So they actually had a different result in Hill but on different facts with different policy. So I do think there is plenty of case law from the Supreme Court of Virginia on this point. And I think the case law supports the fact that when there is a deck sheet that specifically identifies what the U.N. coverage is and for what vehicles, that's what the court in Bear and Hill went with. It's also what this court did in Acre. You're saying Bayer, B-A-Y-E-R. That's why I was kidding. Sorry, Your Honor. So the Bear case, it was a bare bones case. I mean, they even said it. We're not going to burden ourselves with recitations here. How are you going to pull Bear to solve this case? And that is probably one of the most cursory opinions that the Supreme Court of Virginia has ever written. Or one of them. It falls in that line. I mean, it says it. Doesn't it? It's a peculiar opinion, Your Honor. That's true. But that's what the Hill – It does not resolve this problem here. That's what Hill did, Your Honor. Hill went back – I want to make sure. You said Bear did. So now you're saying Hill did. No. Bear had the policy language that we have here, in that there's a deck sheet that specifically says which vehicles were covered for UN purposes. We don't know that from reading Bear. We do know it from reading the subsequent case of Hill. Because the Supreme Court, I think, acknowledged – tacitly acknowledged the point you're making, Your Honor, which is that the Bear case wasn't the most detailed case in the world. So they went back to their own record in Hill, dug up the fact that the deck sheet in Bear had a specific identification of those vehicles covered for UN purposes, and said because of that, a non-owned vehicle was not covered. And so that is the two cases together, Bear and Hill, stand for the proposition. And that's the same approach that this Court took in Acres. In Acres, there was a deck sheet that identified the two specific vehicles that were going to be covered. There was a UN endorsement that, if read literally, would have included a third vehicle. And this Court said, no, you have to read these policy provisions together, and you have to read the deck sheet. And when the deck sheet is considered, that's the – that reflects the agreement of the parties as to which vehicles were covered. It just seems to me that even in the Hill case, the Court gave a couple explanations. That second one seems to indicate clearly that Court and Bear dodged this question. And I'm not sure Virginia Supreme Court has answered this question. It is not as clear as it seems to me. It may be a question they don't want to answer. I mean, sometimes if you can get around and say – they said neither – they didn't really – it was prevalent under either provision. So I don't quite think that either Hill or Bear, you can read them that way. But I don't think it's that clear in terms of what they're saying, because what's clear to me is that Virginia Supreme Court dodged this question in Bear, and I don't think Hill cleaned it up because they used an alternate basis to do it too. Well, the Hill – with all respect, I believe Hill did clean up the situation in Bear. As your Honor mentioned, Bear was not exactly a detailed opinion, but Bear – but Hill went back. There was no detail. It was a cursor. Well, the Hill – that's why Hill actually went back to its record. The court went back to its record in Bear to figure out what it did in Bear, and it figured it out and set forth in Hill. Hill had two differences to differentiate the case before it with Bear, and one of the two is the differences in the policy. And that's what I've explained before, the differences in the policy with Bear. But your basic point, irrespective of how we walk through the woods of Bear and Hill, is that the schedule of coverages in this particular case is very specific as to what autos are covered for what purposes. And one class of automobiles is covered for liability purposes, and it's a very broad class. And then a much more limited class is covered – a more limited class is covered for purposes of UM coverage, and that is limited to owned automobiles only. And how much clearer could that language be? And it comports with Virginia Supreme Court's decision in Stone, which makes the whole matter permissive. But given these schedules of coverages, we don't often have policies that are this clear. I mean, insurance policies are some of the vaguest, most obscure things under the sun. These schedules of coverages are a gift. They tell us what's covered for what purposes and what's not. And if language that is this clear is somehow ambiguous, then we are falling into the old trap that something's always ambiguous if you can find two people to disagree about it, which you can always find two people to disagree about anything. And the other thing about this ambiguity rule is that here we are talking about two sophisticated entities, business entities. We are not talking about an elderly lady living purely on the occasional dividend check and Social Security check. And you want to protect unsophisticated plaintiffs from where you have a policy between two business entities. You get in the pit and wrestle it out yourself. I agree, Your Honor. And again, I go back to one of my earlier points, is that there was another symbol that could have been used, which is symbol 68 for hired autos. That symbol was not used. So the deck sheet is clear. As counsel for the appellant said and admitted, the deck sheet is unambiguous. And, in fact, this court mentioned at Acres the unfairness of having a third vehicle covered when there was no premium paid for that third vehicle. And that's exactly what would happen here. The only premiums that were paid for U.M. coverage were the U.M. coverage on the owned autos only. And they paid a whopping $260 U.M. coverage for the three listed autos in the policy. So that is the only premium paid for any U.M. coverage. The U.M. endorsement itself has no other reference to any other premium. So that would be – Isn't that the insurer's responsibility? I mean, if you're required to have an endorsement, and the endorsement requires you to cover certain vehicles, isn't it on the insurance company to determine what the premium would be rather than to simply write in the schedule what you think the scheduled coverage would be to create the situation that says, well, only this is going to be covered? I think your question presupposes that because the U.M. provision, the U.M. endorsement has a reference or a definition of owned vehicles – Again, I maintain this is probably the first case where you have this conflict between endorsement and scheduled coverage, even if they are healed. There's really coverage either way. And that's the problem we've got here is this conflict that exists between this endorsement provision within the insurance policy and the scheduled coverage. And if you've got a conflict there, the question is, how is it solved? Well, if there is a conflict, Your Honor, it would be that the specific controls over the general. It would. Here we're dealing with a sophisticated insurance company with an entity that's being insured or an individual being insured, and the Virginia law is clear that if there is an ambiguity, it's construed in favor of the person who's not as sophisticated. It's kind of the reason the insurance company is. And if the state of Virginia requires you to have this endorsement, you need to make it abundantly clear if this is not covered in this matter to do it. I think that the insurance company in this situation made it abundantly clear to the declaration sheet. They had to use the Hume endorsement. That's a given. That's Virginia law. They have to use it. So it has this definition. If they have to use it, why wouldn't you write your schedule to conform with this endorsement that you're required to have? But if you believe the plaintiff's view of the world, that document, that endorsement, changes the law in Virginia. That document, if you believe their view of the world, that document promulgated by the State Corporation Commission now would make an insurer provide you coverage for vehicles other than owned vehicles. That's against Stone. That's against the Virginia generalistly statute. But it's included in the policy. When it becomes the policy, regardless of who put it in there, if you want to do business in the state of Virginia, this is how you do it. Guess what? We're not going to do it here. The insurance company will do that. They say, we're not going to do that. We're not going to sell insurance in Virginia because we've got to put this policy in. So if you're given that choice, you don't get the choice that says, we don't like what you wrote, so we don't follow this, and we write something that conflicts it, then it doesn't apply. That would be giving the State Corporation Commission the power to require coverage over vehicles to which there is no other requirement in Virginia. There's no requirement in the U.N. statute, and there's no requirement as construed by the Supreme Court in Stone.  and require coverage for where there is no other grounds or power to do so. That would give the State Corporation Commission legislative power to change the law in Virginia. No, there is none. In fact, when they promulgate forms, the State Corporation Commission must comply with the law. They cannot change the law in Virginia by promulgating a form. What gives them the authority to require the endorsement to be put in there? That's a statute in Virginia that allows the State Corporation Commission, if there is a type of endorsement or type of coverage that's used with some consistency, to promulgate forms to be used for that purpose. And once that form is promulgated, it must be used by insurers in Virginia. Isn't the endorsement just on its own terms that clear? I don't think. I think the endorsement is not ambiguous as applied to the policy. I think that just because a phrase or a definition is not applicable doesn't make it ambiguous. And we cited to the court a district case of Grossburg where it dealt with the term family member, which is another part of the U.N. endorsement. The insurers of the first class include the named insured and family member. And in that case, the named insured is a corporation. The wife of the sole shareholder was injured in an accident, and she tried to argue that she was a family member of the corporation. And as the court there said, just because language could be cumbersome or just because language could be inoperative in certain situations does not make it ambiguous.  Your Honor, I'll close by paraphrasing this court in the Pennsylvania National v. Roberts case, which is a case cited by the amicus of the VADA. It's a dispiriting but inescapable fact that bad things can happen and those responsible are not adequately insured. But that should not allow courts to ignore the law and hold an insurance company to a contractual provision to which it never agreed. And in this case, that's exactly what would happen if the plaintiff and appellant's view is taken, and they have never stated up to this point what Walsall could have done differently. They say that the deck sheet is unambiguous, and they acknowledge that we have to use this U.N. form promulgated by the State Corporation Commission. They've never said what Walsall could have done differently to make it even more clear than it already is. Thank you, Your Honor. Mr. Leach, we'd be pleased to hear from you in rebuttal. Thank you, Your Honor. Kevin Leach representing the estate of Carlos Bolanos in this matter. Just to sum up here in terms of the division of opinions on what should control in this particular case, Judge, on the one hand we have the U.N. endorsement. Walsall has to write the policy in conformance with the U.N. endorsement, Judge, and they are to underwrite their policies in a way that conforms to the law. I believe that if I was an underwriter, which I'm not, you would charge the proper premium, and you would construct. Under your theory, there's no way an insurer in Virginia could issue a policy that the government only recovered on this? Well, as one of the judges either in the Porter or the Neff case, Judge Moon, I believe, said Walsall could choose not to write the policies in Virginia if they did not want to do it that way. But at present, the law is and the forms are that U.N. endorsement is part of acquired forms which was aired publicly. What authority does the state corporation have to issue an endorsement like that that would appear to contradict both the statute and the Supreme Court opinion that there is no mandatory U.N. coverage? That form, as I understand it, Judge, is aired publicly for all insurance companies to make public comment on it. What I'm looking for is the authority. There is a statute in the brief, Judge, which I'll be happy to supply with that. But there is a series of statutes as to how these forms are promulgated. And it is a public process that is a legislative process. In the process, what I'm looking for is the authority in the state corporation to issue either an override statute or override the Supreme Court decisions that say we do not have to issue U.N. coverage on these terms. You're saying as a matter of law they have to. I don't know if there is a statute to that effect, Judge. I know that what we're doing is we're competing. We're making competitions out of one legislative series of laws for the U.N. passage, passage of the U.N. endorsement versus the stunt case. But you're making, to follow up on Judge Agee's point, you're making U.N. coverage completely coexistent or completely identical to liability coverage. And you're saying the one inevitably follows the other, that U.N. coverage is coterminous with liability coverage. Because if every policy has to include the endorsement, then you're making that a mandatory rule. And the Virginia Supreme Court has said exactly the opposite. I would disrespectfully disagree on that point, Judge. Why? Because you have these very specific, if this endorsement trumps these very specific provisions in this policy, it would trump equally specific provisions in every policy. I would suggest, Judge, that we can resolve this case in this very easy way. The Seals case, as clearly as you have suggested, that the Declaration of Page clearly says that there is no U.N. coverage for non-owned vehicles. The Seals case clearly and unambiguously states just as clearly, Judge, that there is coverage for a vehicle to which the bodily injury or property damage liability coverage of the property applies, of the insurance policy applies. In Seals, Judge, and that is the proper analysis in this case, it's the last paragraph in Seals. The fact that that coverage may have existed in that case does not answer the question as to what authority there is to require every insurance company that does business in Virginia to write a policy that must have these terms in it. Well, I don't think there is a decision, Judge, that has actually addressed this issue in Virginia. I don't think there is one. And I think, to Judge Wynn's point, maybe it goes to the Virginia Supreme Court. I don't think it's up to this court. If that's the craw. There are decisions that address it because what the decisions say invariably is clear and specific instructions as to coverages. Would Trump a more general expression? I see my time is up, Judge, but just to finish that thought, it's our position, Judge, that the Seals case is the controlling case in this matter and it directly addresses the very language that we have in this case. The U.M. endorsement does provide U.M. coverage for this vehicle. And it is as specific, if not more specific, and controlling because it's a case on point on this case. The Stone case can be distinguished because it doesn't deal with the same issue, Judge. This particular case is the most recent case on this U.M. coverage aspect. And we would respectfully suggest that if the court applies Seals, it avoids rewriting the contract, which the defense wants to do in this case, so that it favors coverage. And we respectfully request that the decision of the district court be overturned, summary judgment entered in favor of it. Let me ask you this. Yes, Your Honor. If the endorsement was the only thing here, in the Seals case you don't have a reference to the schedule. Does it favor your position? We actually do have a reference in the Seals case to the specific case. They call it the declarations, Judge. And the declarations, I think it's, again, it's the last paragraph in the Seals case. If you just read that, you'll get this immediately. The endorsement alone, you just didn't look at the schedule. Would that favor you totally? If I just look at the endorsement alone, sure, absolutely. What I'm perplexed with is the aspect of the authority of the corporations. I don't understand all the Virginia administrative decisions. But once they put it in the policy, what vehicle would be available to an insurance company, maybe a declaratory judgment or some type of action that says, we don't want to provide this, you don't have the authority to tell us to do this? It seems like to me you wouldn't just put it in the policy. No. And then come back and say, you didn't have the authority to tell me to do this. This is a legislative decree, more or less, Judge, using this form from the SCC. And so to say that we can't use the SCC form here or there's a conflict with policy and you've got Seals versus Stone versus Acres and we could go on and on about these cases. But I agree with you, Judge. Acres doesn't really say. No need to certify this question? I do believe, Judge. The other way or what? I do believe we should win on this particular case, Judge, because I believe the insurance endorsement language in this case follows Seals absolutely directly. And the Virginia Supreme Court should not be second-guessed on that. They should be followed, Judge, in this particular case. You don't want to certify it? Judge, if there is an issue with respect to the – You've heard the issue. You've heard that Judges v. Stone actually goes the other way. Heel and bear has it going this way, and now you tell me Seals is going there. I would say this, Judge. With the conversation – I apologize, Judge. With the conversation we've had today, it is worthy to be certified. Well, no, you don't want to certify it. You're afraid of what they're going to come up with. I believe we should win no matter where we go, Judge. But to the extent that we defer to a Supreme Court of Virginia that's already spoken on this issue – I have to tell you something about certification. Not invariably, but sometimes it annoys state courts because it's not something that they plan and all of a sudden plunk. It's down on them. And sometimes the certifying record leaves a lot to be desired, and the framing of the question leaves a lot to be desired, and it keeps the whole meter running. And if I were a state Supreme Court justice and this case was certified, with all respect to you, I would say, what is the Fourth Circuit doing? They've got this clear – they've got this decision for the Supreme Court. They've got these clear schedules of coverages, and they're certifying this thing over to us when all they need to do is sit down and follow the clear, plain language of those schedules of coverage. Judge – You know, you almost have to send a note of apology. In my mind, Judge, I think the Virginia Supreme Court said, why are they sending it to us because the Seals case has already decided this in favor of the plaintiff. All right. That's all, Judge. If there's any other questions, I'll be happy to answer them. Come down and greet you and then turn to the next case.
judges: J. Harvie Wilkinson III, G. Steven Agee, James A. Wynn Jr.